USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/9/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ATLANTICARE MANAGEMENT, LLC,
d/b/a PUTNAM RIDGE,

                         Plaintiff,

         -against-

SCOTTSDALE INSURANCE COMPANY,

                         Defendant.

24-cv-3956 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Atlanticare Management, LLC d/b/a Putnam Ridge ("Putnam Ridge" or "Plaintiff") commenced this action on May 22, 2024, asserting claims for breach of contract and declaratory judgment against Defendant Scottsdale Insurance Company ("Scottsdale" or "Defendant"). (ECF No. 1.) Plaintiff filed the operative First Amended Complaint on June 20, 2025. ("FAC," ECF No. 26.)

Presently before the Court is Defendant's motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot., ECF No. 32.) For the following reasons, Defendant's motion is GRANTED with prejudice.

## BACKGROUND

### A. Factual Background

The following facts are derived from the First Amended Complaint and are taken as true and construed in the light most favorable to the Plaintiff at this stage.

Plaintiff Putnam Ridge is a limited liability company incorporated in New York. (FAC ¶ 1.) Defendant Scottsdale Insurance Company is an insurance company incorporated in Ohio, with its principal place of business in Arizona. (*Id.* ¶ 3.) Putnam Ridge operates a nursing and

1

rehabilitation facility in Brewster, New York. (*Id*. ¶ 8.) As part of its employee benefits program, Putnam Ridge offers its employees self-insured health care benefits (the "Plan"). (*Id*. ¶ 9.) In order to remain covered in the Plan, employees are required to contribute premiums or work a certain number of hours to be eligible for benefits under the Plan. (*Id*. ¶ 10.) Putnam Ridge entered into a Network Service Agreement ("NSA") with Cigna Health and Life Insurance Company ("Cigna"), allowing for Putnam Ridge employees in the Plan to receive care from providers within Cigna's network. (*Id*. ¶ 11.) Westchester County Health Care Corporation (the "Hospital") is a participating provider in Cigna's network, meaning Putnam Ridge's employees in the Plan can receive treatment and care from the Hospital. (*Id*. ¶ 12.)

Putnam Ridge was insured under a Senior Care Liability Insurance package policy issued by Scottsdale Insurance Company (the "Policy"). (*Id*. ¶ 29.) The Policy provides Putnam Ridge Employee Benefits Liability ("EBL") coverage with limits of $1,000,000 per claim and $3,000,000 in the aggregate. (*Id*. ¶ 30.) The EBL coverage states that:

> "[Scottsdale] will pay those sums that [Putnam Ridge] becomes legally obligated to pay as damages because of any act, error or omission, of [Putnam Ridge] or of any other person for whose acts [Putnam Ridge] is legally liable, to which this insurance applies. [Scottsdale] will have the right and duty to defend [Putnam Ridge] against any "suit" seeking those damages . . . This insurance applies to damages only if: (1) [t]he act, error or omission is negligently committed in the 'administration' of your 'employee benefit program.'" (*Id*. ¶ 31.)

The Policy offers the following pertinent definitions:

> Administration is defined as: "[p]roviding information to 'employees,' including their . . . beneficiaries, with respect to eligibility for or scope of 'employee benefit programs.'" (*Id*. ¶ 32.) Administration also includes "[e]ffecting, continuing or terminating any 'employee's' participation in any benefit included in the 'employee benefit program.'" (*Id*.)

> The Policy further provides that a "claim" seeking damages is deemed made when notice of the "claim" is received and recorded by either the insured or Scottsdale, whichever comes first. (*Id*. ¶ 33.) A claim is defined as "any demand, or 'suit,' made

2

by an 'employee' or an 'employee's' . . . beneficiaries, for damages as the result of an act, error or omission." (*Id*. ¶ 34.)

An employee is defined as a "person . . . formerly employed" by Putnam Ridge." (*Id*. ¶ 35.)

The Policy does not define "beneficiaries." (*Id*. ¶¶ 38–39.)

On or about March 24, 2021, an employee of Putnam Ridge stopped consistently appearing for work (the "Patient"). (*Id*. ¶ 14.) Consequently, on or about March 31, 2021, the Patient was no longer eligible for Plan benefits. (*Id*. ¶ 15.) On or about June 22, 2021, the Patient went to the Hospital to receive medical treatment and care. (*Id*. ¶ 16.) On June 23, 2021, the Patient signed a General Consent for Treatment Agreement with the Hospital, which included a clause (the "Assignment") providing that the Patient "assign[ed] to [the Hospital] any and all rights, title, and interest that I have in any insurance proceeds or benefits payable to me or on my behalf for services rendered to me by [the Hospital]." (FAC ¶ 17.) Putnam Ridge alleges that the Hospital was erroneously informed that the Patient was actively enrolled in the Plan and, in accordance with that status, provided the Patient with medical care in the amount of approximately $1.6 million. (*Id*. ¶¶ 18–19.)

After the Patient was discharged, the Hospital submitted a claim for reimbursement to Cigna, but Cigna refused to pay the claim, alleging that Putnam Ridge was responsible for payment of the Hospital's claim because the Patient was enrolled in the Plan sponsored by Putnam Ridge. (*Id*. ¶ 20.) In or about February 2022, the Patient attempted to have Putnam Ridge pay the claim, but Putnam Ridge advised the Patient that she was not enrolled in the Plan at the time of her medical service with the Hospital due to her failure to work the required number of hours and/or pay premiums. (*Id*. ¶ 21.) The Patient objected to Putnam Ridge's response and complained to

3

Putnam Ridge concerning its alleged errors and omissions in failing to inform her or the Hospital that she was no longer covered under the Plan. (*Id*. ¶ 22.)

On February 25, 2022, Putnam Ridge reported to Scottsdale the Patient's objection and complaints concerning Putnam Ridge's alleged errors in administering the Plan. (*Id*. ¶ 23.) Scottsdale acknowledged the claim on March 8, 2022, opened a file concerning the Patient's complaints, and stated that it understood the notice to concern "errors arising in the administration of the facilities employee benefit program that may give rise to a future claim." (*Id*. ¶ 24.)

Pursuant to the General Consent for Treatment Agreement, the Patient assigned to the Hospital "any insurance proceeds or benefits payable" to her or on her behalf for services the Hospital rendered. (*Id*. ¶ 17.) Putnam Ridge alleges that this assignment reaches damages recoverable against Putnam Ridge for errors in administering the Plan, and that the Hospital, having stepped into the Patient's "shoes," sued on the assigned rights. (*Id*. ¶¶ 25–26.) On October 2, 2023, the Hospital commenced that action against Cigna and Putnam Ridge in the Supreme Court of New York, County of Westchester, Index No. 64114/2023 (the "Underlying Action"), alleging that Putnam Ridge was financially responsible for the Hospital's damages for the cost of the Patient's care. (*Id*. ¶¶ 26–27.) On November 6, 2023, Cigna filed crossclaims against Putnam Ridge, alleging that Putnam Ridge "failed to provide Cigna with timely and/or accurate information regarding the Patient's eligibility." (*Id*. ¶ 28.)

Putnam Ridge alleges that the Hospital qualifies as the Patient's beneficiary for purposes of the EBL coverage and that the Underlying Action therefore triggers Scottsdale's duty to defend and indemnify under the Policy. (*Id*. ¶¶ 41–42, 45–46.) Putnam Ridge provided Scottsdale timely notice of the claim (*Id*. ¶ 47), which Scottsdale acknowledged as "concerning errors arising in the administration of the facilities employee benefit program that may give rise to a future claim" (*Id*.

¶ 48). When the Underlying Action was filed, Putnam Ridge tendered the suit and demanded a defense and indemnity. (*Id*. ¶ 50.) Scottsdale denied coverage, stating that the matter did "not appear to implicate the Employee Benefits Liability coverage part" of the Policy, and declined to reverse that denial after Putnam Ridge appealed. (*Id*. ¶¶ 52–54.)

Based on the foregoing, Putnam Ridge asserts claims for breach of contract and declaratory judgment against Scottsdale.

### B. Procedural History

On May 22, 2024, Plaintiff commenced this action against Defendant. (ECF No. 1.) Defendant first moved to dismiss on July 19, 2024. (ECF No. 14.) The Court denied that motion without prejudice as prematurely filed. (ECF No. 16.) Defendant renewed its motion to dismiss on September 9, 2024. (ECF Nos. 17–18.) Plaintiff opposed the motion, and Defendant filed a reply. (ECF Nos. 19, 21.) On May 29, 2025, the Court granted Defendant's motion without prejudice, holding that the Complaint did not plausibly allege that the Hospital was a "beneficiary," and granted Plaintiff leave to amend. (Former Opinion, ECF No. 25.)

Plaintiff filed its FAC on June 20, 2025. (FAC, ECF No. 26.) Defendant moved to dismiss the FAC and filed a corresponding memorandum of law in support of its motion. (Mot. & Mem., ECF No. 32.) Plaintiff subsequently filed its opposition and Defendant filed its reply. (Opp & Reply, ECF Nos. 34-35.)

### LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings claims for breach of contract and declaratory relief. (FAC ¶¶ 56–71.) The Court addresses each in turn.

### A. Breach of Contract Claim

To state a claim for breach of contract under New York law, a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F. 3d 337, 348 (2d Cir. 1996).

The dispute centers on whether Scottsdale breached the Policy by refusing to defend and indemnify Putnam Ridge. Scottsdale's duty arises only if the Underlying Action is a covered "claim," meaning a "suit" by an "employee" or an "employee's . . . beneficiaries" seeking "damages as the result of an act, error or omission" negligently committed in the "administration" of the Plan. (FAC ¶¶ 31, 34.) The FAC therefore must plausibly allege both that the suit was brought by a covered claimant and that it seeks covered damages. It does neither.

First, the Hospital is not a "beneficiary" under the EBL coverage. The General Consent for Treatment Agreement conveyed only the Patient's right to insurance proceeds or benefits payable for services rendered by the Hospital; it did not make the Hospital the Patient's beneficiary or transfer any claim for damages arising from Putnam Ridge's alleged negligent administration of the Plan. (*Id*. ¶ 17.) Second, the Underlying Action seeks payment for the value of services the Hospital provided, not damages resulting from any negligent administration of the Plan.[1] (*Id*. ¶¶ 31, 42.) Either defect is dispositive.

### 1. The Hospital Is Not a "Beneficiary."

Putnam Ridge no longer rests the Hospital's beneficiary status solely on its right to payment. Instead, it relies on the Assignment, under which the Patient "assign[ed] to [the Hospital] any and all rights, title, and interest that [she had] in any insurance proceeds or benefits payable to [her] or on [her] behalf for services rendered to [her] by [the Hospital]." (FAC ¶¶ 17, 25, 40–42.) Putnam Ridge contends that it is "immaterial what kind of claims" the Patient assigned so long as the Assignment made the Hospital a "beneficiary." (Opp. at 9.) That theory fails.[2]

---

[1] The Underlying Action was brought by the Hospital, which pleaded three causes of action against Putnam Ridge: breach of an express or implied-in-fact contract, unjust enrichment, and quantum meruit. (Ex. A. ¶¶ 74-89 ECF No. 26-1.)  Each seeks payment for, or the reasonable value of, the medical services the Hospital rendered. (*Id*.)

[2] Putnam Ridge argues that the scope of the Assignment is a fact question reserved for trial. (Opp. at 12.) Not so. The Assignment is incorporated into the FAC by reference and is the instrument on which Putnam Ridge's claim

Read by its terms, the Assignment conveyed the Patient's rights to "insurance proceeds or benefits payable . . . for services rendered," and nothing more. (FAC ¶ 17.) It did not assign any claim for damages arising from Putnam Ridge's alleged negligent administration of the Plan. To make a valid assignment of a claim or cause of action, "the owner must manifest an intention to make the assignee the owner of the claim," and "if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 403 F. Supp. 3d 257, 262–63 (S.D.N.Y. 2019), aff'd sub nom. *Sonterra Cap. Master Fund, Ltd. v. UBS AG*, 152 F.4th 404 (2d Cir. 2025). Any claim the Patient may have had for damages arising from Putnam Ridge's alleged negligent administration of the Plan is not "insurance proceeds or benefits payable . . . for services rendered," and the FAC does not plausibly allege that such a claim was assigned. (FAC ¶ 17.) The right the Hospital received was limited to payment for the care it provided.

Nor does the Policy's failure to define "beneficiary" save Putnam Ridge's claim. "[T]he lack of a definition" does not, by itself, render a contractual term ambiguous. *Michael Cetta, Inc. v. Admiral Indem. Co.,* 506 F. Supp. 3d 168, 176 (S.D.N.Y. 2020). Courts may look to a term's plain meaning, but they must also read the term "in the context of" the entire integrated agreement and consistent with the relevant usage. *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). Here, "beneficiary" appears in an Employee Benefits Liability coverage part that covers negligent "administration" of an "employee benefit program." (FAC ¶¶ 31–32, 42.) It must be read in that context.

---

depends, *see Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (pleadings include documents the plaintiff relied upon in bringing suit), and courts routinely construe the scope and validity of assignments at the pleading stage, *see Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1113–14 (2d Cir. 2024) (affirming Rule 12(b)(6) dismissal and construing patient-assignment scope from the plan documents and assignment forms); *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 418 (2d Cir. 2015) (assessing on the pleadings whether an assignment conveyed the right to sue). The assigning instrument here is undisputed and quoted in the pleading.

Putnam Ridge urges a broad dictionary definition of "beneficiary" as someone designated to receive an advantage from an assignment. (Opp. at 10.) But that reading proves too much. If "beneficiary" included anyone who received any assigned right, every assignee of a contract right would qualify. That is not a natural reading of the EBL coverage, which refers to an "employee" and an "employee's . . . beneficiaries" in the context of an employee benefit program. In that context, a "beneficiary" is someone with rights to receive coverage under the Plan, not merely someone assigned a right to payment for services rendered. *See Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015) ("A beneficiary is best understood as an individual who enjoys rights equal to the participant's to receive coverage from the healthcare plan. A participant's spouse or child is the most likely candidate for this term.").

The Assignment does not alter that conclusion. Even accepting Putnam Ridge's dictionary definition, the Hospital would be a beneficiary only of the specific right assigned: the Patient's right to "insurance proceeds or benefits payable . . . for services rendered." (FAC ¶ 17.) That is a right to payment, not a right to coverage under the Plan or a claim for damages caused by negligent administration. Putnam Ridge cannot use the Assignment broadly to create beneficiary status while reading it narrowly to avoid its limited scope. The same language controls both issues.

Putnam Ridge's authorities confirm the point. The ERISA cases on which it relies hold that a provider-assignee may assert the rights actually assigned by the patient; they do not hold that a provider becomes a plan beneficiary merely by receiving an assignment. *See Montefiore Med. Ctr. v. Teamsters Loc*. 272, 642 F.3d 321, 329–30 (2d Cir. 2011). Indeed, *Rojas* rejected that broader reading, explaining that healthcare providers are not "beneficiaries" simply because they seek payment for services rendered. 793 F.3d at 257–58. Rather, in this context, benefits are the bargained-for healthcare services themselves, and a beneficiary is someone with rights equal to

the participant's right to receive coverage under the healthcare plan. *Id*. at 258. At most, then, the Hospital may stand in the Patient's shoes to assert what the Patient assigned: proceeds or benefits payable for services rendered. That is not enough to make the Hospital a beneficiary under the EBL coverage.

Accordingly, the FAC does not plausibly allege that the Underlying Action was brought by an "employee" or an "employee's . . . beneficiar[y]." For that reason alone, Scottsdale had no duty to defend or indemnify Putnam Ridge under the EBL coverage.

### 2. The Underlying Action Is Not a Covered "Claim."

Even if the Hospital were a beneficiary, the FAC would fail because the Underlying Action is not a "claim," defined as a demand or "suit" by an employee or beneficiary "for damages as the result of an act, error or omission" "negligently committed in the 'administration'" of the Plan. (FAC ¶¶ 31, 34.) The Underlying Action's three causes of action all seek payment for, or the value of, services the Hospital rendered, on theories of contract, unjust enrichment, and quantum meruit. (Ex. A., ¶¶ 74–89, ECF No. 26-1.) Each measures the Hospital's recovery by the value of the care it provided, not by any loss the Hospital sustained from how Putnam Ridge administered the Plan.

Putnam Ridge responds that the Hospital's loss flowed from Plan administration because, had Putnam Ridge not allegedly misstated the Patient's eligibility, the Hospital would not have expected payment under the Plan. (Opp. at 13–14.) But that argument describes the factual background of the payment dispute; it does not change the nature of the claims asserted in the Underlying Action. The gravamen of the Underlying Action is which payor, Putnam Ridge or Cigna, must bear the cost of care already provided, not whether the Hospital suffered damages because of negligent administration of an employee benefit program.

10

Putnam Ridge invokes the breadth of the duty to defend, which arises whenever the underlying allegations create a "reasonable possibility of coverage." *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 91–92 (N.Y. 1991). But the duty to defend, though broad, is not limitless; it does not arise where "there is no possible factual or legal basis" on which the insurer may eventually be obligated to indemnify the insured. *See Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (1991). Putnam Ridge points to the Underlying Action's allegation that the Hospital was "incorrectly informed" the Patient was eligible (Ex. A ¶¶ 37–38), and to Cigna's crossclaim that Putnam Ridge "failed to provide Cigna with timely and/or accurate information regarding the Patient's eligibility" (FAC ¶ 28; Ex. B ¶¶ 8–9). Those allegations reference eligibility information, but they do not transform the Underlying Action into a suit seeking covered damages.

Putnam Ridge's argument conflates two different injuries. The administration error Putnam Ridge identifies, namely informing the Hospital that the Patient remained enrolled, could have injured the Patient, who allegedly learned only after treatment that she had lost coverage and faced personal exposure for the cost of her care. (*See* FAC ¶¶ 21–22.) A suit by the Patient seeking damages arising from that alleged error might present a different coverage question. But the Underlying Action is not that suit. The Patient did not sue; the Hospital did. And the Hospital sued to recover reimbursement for, or the reasonable value of, the services it rendered, not damages arising from the Patient's alleged loss of coverage or any separate injury caused by Putnam Ridge's administration of the Plan. The eligibility allegations supply the narrative of how the parties arrived in litigation; they are not the wrong for which the Hospital seeks damages.

The Policy language leads to the same result. The EBL coverage applies only to "damages . . . as the result of" an administration error. (FAC ¶ 31.) That phrase requires the alleged error to be the source of the damages claimed, not merely part of the sequence of events leading to the

11

dispute. Even assuming that the eligibility misstatement qualifies as an act in the "administration" of the Plan, the damages sought in the Underlying Action are reimbursement damages measured by the medical services provided. They are not damages for an injury caused by the alleged misstatement itself. Accordingly, the FAC does not plausibly allege that the damages sought in the Underlying Action were damages "as the result of" an administration error under the EBL coverage.

Cigna's crossclaim does not change the analysis. Cigna is neither an "employee" nor an "employee's" beneficiary, and its crossclaim sounds in Putnam Ridge's alleged breach of the NSA, not in negligent administration of the Plan. (FAC ¶ 28; Ex. B ¶¶ 8–9.) It therefore cannot constitute a covered "claim" under the EBL coverage.

For this independent reason, Scottsdale had no duty to defend or indemnify Putnam Ridge, and the breach of contract claim is dismissed with prejudice.[3]

## B. Declaratory Relief

Under the Declaratory Judgment Act, "[i]n a case of actual controversy," the Court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In deciding whether to exercise that "permissive jurisdiction," a district court may consider "equitable, prudential, and policy arguments" and "must examine the situation in its entirety." *Clear Channel Outdoor, LLC v. City of New Rochelle*, No. 20-CV-9296 (NSR), 2024 WL 2058645, at *13 (S.D.N.Y. May 7, 2024) (quoting *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233, 254 (S.D.N.Y. 2023)). Courts also consider whether **a**

---

[3] The Court does not adopt Scottsdale's broader framing that coverage required the Patient to have assigned, and the Underlying Action to have asserted, a discrete tort claim for negligent administration. (See Mem. at 7–8.) The Policy's text does not impose those precise requirements. Plaintiff's claim fails on the Policy's actual terms because the Underlying Action was not brought by a covered claimant seeking covered damages.

declaratory judgment would "serve a useful purpose in clarifying or settling the legal issues involved" and whether it would "finalize the controversy and offer relief from uncertainty." *Id*.

Here, Putnam Ridge's declaratory judgment claim seeks a declaration that Scottsdale is obligated to defend and indemnify Putnam Ridge in connection with the Underlying Action. Because the FAC fails to plausibly allege that Scottsdale owed Putnam Ridge either obligation under the EBL coverage, the declaratory judgment claim fails for the same reasons as the breach of contract claim. The Court therefore grants Defendant's motion to dismiss Plaintiff's declaratory judgment claim with prejudice.

### C.  Leave to Amend

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the precise defects of those claims. *Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). If a complaint's deficiencies are "substantive" as opposed to "inadequately or inartfully" pled, an opportunity to replead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Milanese v. Rust—Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (leave to amend should be granted "unless there is evidence of undue delay, bad faith, undue prejudice", or "futility.").

Leave to amend the FAC is denied as futile. The Court's prior Opinion identified the defect in the original Complaint and gave Plaintiff an opportunity to allege that the Hospital "qualifies as a beneficiary of the employee pursuant to the Plan." (Former Opinion at 7.) The FAC does not cure that defect. Although the FAC now alleges that the Hospital is the Patient's beneficiary, that allegation rests entirely on the Assignment, which conveyed only the Patient's right to insurance proceeds or benefits payable for services rendered. That theory fails as a matter of law for the

reasons stated above. The Underlying Action was dismissed with prejudice on May 27, 2025. (Stip. of Discontinuance, ECF No. 32-2.) That dismissal further confirms that Plaintiff cannot cure the defect by recasting the Hospital's reimbursement action as a different suit seeking damages for negligent administration of the Plan. Plaintiff's request to replead a third time (Opp. at 14–15) identifies no additional facts that would change the result. *See Cuoco*, 222 F.3d at 112.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the breach of contract and declaratory judgment claims with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 32, enter judgment for Defendant, and close this case.

Dated:    June 9, 2026

    White Plains, New York

SO ORDERED:

_____

NELSON S. ROMÁN
United States District Judge